**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DUGAGJIN MRIJAJ<br><br>            Plaintiff,<br><br>    v.<br><br>GARTHCHESTER REALTY, LTD and 105 NORTHGATE TENANTS CORPORATION<br><br>            Defendants. | Docket No. 16 Civ. 9102<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

      Plaintiff Dugagjin Mrijaj, by and through his attorneys at the Filosa Law Firm, PLLC, as and for his Complaint in this action against Defendants Garthchester Realty, Ltd. ("Garthchester") and 105 Northgate Tenants Corporation ("Northgate") (collectively, "Defendants") alleges upon personal knowledge and upon information and belief as to other matters as follows:

### NATURE OF THE CLAIMS

      1.      This is an action seeking declaratory, injunctive and equitable relief, as well as monetary damages, to redress Defendants' violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). Specifically, Defendants violated the FLSA and NYLL when they failed to pay Plaintiff any compensation for hours that he worked in excess of forty (40) in a given workweek. Instead, Defendants only paid Plaintiff for the first forty (40) hours that he worked. To the extent that Defendants intend to argue that Plaintiff was not entitled to overtime compensation pursuant to the NYLL's Minimum Wage Order for the Building Service Industry ("Minimum Wage Order") because he was classified as a janitor in a residential building, Defendants cannot claim the benefit of this exemption because, inter alia, Defendants

1

did not record the number of units in place of the hours worked on Plaintiff's wage statements, as required by 12 N.Y.C.R.R. § 141-2.2. Instead, the paystubs that Defendant issued to Plaintiff listed Plaintiff as an hourly employee working forty (40) hours per week and the pay notice that Defendants provided to Plaintiff listed him as an hourly employee and indicated that he would paid overtime compensation (though Defendants never actually paid Plaintiff overtime compensation).

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 as this case is brought under the FLSA. The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the wage violations that gave rise to these claims primarily occurred in this District.

## THE PARTIES

4. Plaintiff Dugagjin Mrijaj currently resides in Westchester County, New York and was formerly employed by Defendants as the superintendent for the building owned by Northgate and operated by Garthchester located at 105 Garth Road, Scarsdale, NY 10583. At all relevant times, Plaintiff Mrijaj was an "employee" within the meaning of the FLSA and NYLL.

5. Defendant Garthchester Realty, Ltd. is a New York limited company organized and existing under the laws of the State of New York, with a principal place of business located at 209 Garth Road, Scarsdale, NY 10583. Garthchester is the managing agent for Defendant Northgate and, as outlined below, was an "employer" within the meaning of the FLSA and NYLL at all times relevant to this matter.

6. Defendant 105 Northgate Tenants Corporation is a domestic business corporation organized and existing under the laws of the State of New York, with a principal place of business located at 105 Garth Road, Scarsdale, NY 10583. At all relevant times, Defendant Northgate was an "employer" within the meaning of the FLSA and NYLL.

## FACTUAL ALLEGATIONS

**Defendants Jointly Employed Plaintiff**

7. During the course of his employment as the superintendent for the building owned by Northgate located at 105 Garth Road, Defendants jointly employed Plaintiff.

8. While Northgate was the ultimate employer or the employer of record, Garthchester exercised sufficient control over the work that Plaintiff performed and other terms and conditions of Plaintiff's employment with Northgate to meet the definition of an employer under both the FLSA and the NYLL.

9. After applying for the position in 2008, Plaintiff was interviewed by Oscar Szomar, who was employed by Garthchester at that time as the Property Manager for the building owned by Northgate. After interviewing with Mr. Szomar, Plaintiff was then interviewed by Northgate's Board of Directors. When Northgate offered Plaintiff the position, it was Mr. Szomar that notified Plaintiff of the offer.

10. Throughout the course of his employment with Northgate, Garthchester – through the Property Manager in place from time to time – and Northgate both exercised direct, day-to-day supervision over the work that Plaintiff performed.

11. Plaintiff routinely received work assignments from Garthchester's Property Manager and was expected to comply with those requests. In fact, when Defendant Northgate terminated Plaintiff's employment, it claimed that it was, in part, because Plaintiff allegedly

3

refused to perform work assigned to him by Carol Dreher, who was then serving as Garthchester's Property Manager for the building owned by Northgate.

12. When Northgate terminated Plaintiff's employment, it was Garthchester that Plaintiff of his termination. The termination letter was issued on Garthchester's letterhead and listed Garthchester as the Managing Agent for Northgate

13. Plaintiff also frequently received work assignments from Northgate, either through Barry Kramer, the President of Northgate's Board of Directors, or directly from Northgate's residents/shareholders, through the submission of work orders or verbal notification of work that needed to be performed. Plaintiff was expected to complete these assignments from Mr. Kramer and other residents/shareholders.

14. Throughout the course of his employment, Plaintiff was required to fill out timesheets and submitted them timesheets to Garthchester. Plaintiff was then issued a payroll check under the name of Northgate. Upon information and belief, the President of Northgate's Board of Directors was required to approve Plaintiff's timesheets before he would be paid. Thus, Garthchester and Northgate shared responsibility for processing Plaintiff's timesheets and payroll.

15. The payroll checks that Defendants issued to Plaintiff did not accurately list the number of overtime hours that Plaintiff was working; instead, these payroll checks typically reported forty (40) regular hours and no overtime hours.

16. Garthchester maintained the records related to Plaintiff's employment with Northgate, such as timesheets, pay notices, and correspondence with Plaintiff's union related to Plaintiff's employment with Northgate.

**Defendants' Failure to Pay Overtime Compensation**

17. From approximately May 2008 through August 9, 2016, Defendants employed Plaintiff as the superintendent for the building owned by Northgate located at 105 Garth Road, Scarsdale, NY, 10583.

18. At the start of his employment, Defendants paid Plaintiff on an hourly basis at a rate of $17.50 per hour.

19. Plaintiff's hourly rate increased over time and, at the time that Defendant terminated Plaintiff's employment, Plaintiff's hourly rate was $20.675 per hour.

20. During the course of his employment with Defendants, Plaintiff resided in an apartment in the building owned by Northgate. Defendant Northgate provided this residence to Plaintiff, in part, so that Plaintiff would be available to provide services on a 24-hour basis and respond outside of normal work hours.

21. While Plaintiff was expected to work from 8:00 am to 4:00 pm Tuesday through Saturday, he often started his workday at 7:00 am or 7:30 am and often ended his workday around 4:30 pm or 5:00 pm. On an average workday, Plaintiff worked nine (9) hours during these normal work hours.

22. Plaintiff generally did not take a lunch break (or at least not the uninterrupted thirty-minute meal break required by the NYLL).

23. Plaintiff was also required to respond to time sensitive requests from the President of Northgate's Board of Directors and other residents/shareholders that occurred outside of Plaintiff's normal work hours. Plaintiff was never provided any additional compensation for this work.

24.     Plaintiff was not scheduled to work on Sunday and Monday, however, he was required to do so on numerous occasions (e.g., when there was inclement weather and he had to shovel snow or salt walkways, when he had to respond to an emergency in one of the residential units, or when he had to provide access to an inspector or repairman). Plaintiff was never paid any additional compensation for this work.

25.     Plaintiff complained to Garthchester's Property Managers about Defendants' failure to pay overtime compensation on multiple occasions throughout the course of his employment with Defendants. Garthchester's Property Managers generally responded by saying that they would discuss it with Barry Kramer and then, when Plaintiff followed up, they would typically tell Plaintiff that Mr. Kramer would not approve overtime hours and that Plaintiff would "just have to deal with it."

26.     Plaintiff did not record his overtime hours on his timesheet because he was told on that Mr. Kramer would not approve it. Plaintiff also feared that if he properly recorded his overtime hours, he would be subject to disciplinary action.

27.     Defendants were fully aware of the work that Plaintiff was performing outside of his normal work hours, but Defendants failed to correct this unlawful practice and continued to pay Plaintiff only for the first forty (40) hours that he worked in a given workweek.

## FIRST CAUSE OF ACTION
**(FLSA: Failure to Pay Overtime Compensation)**

28.     Plaintiff alleges and incorporates by reference all allegations in all preceding paragraphs, as if fully set forth herein.

29.     During the relevant time period, Plaintiff frequently worked in excess of forty (40) hours per workweek and, because of Defendants' above-outlined violations of the FLSA, Defendants did not pay Plaintiff appropriate (or any) overtime compensation.

30.     Despite the hours worked by Plaintiff, Defendants willfully, in bad faith, and in knowing violation of the FLSA, failed and/or refused to pay Plaintiff any overtime compensation.

31.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C §§ 216(b) and 255(a).

32.     Plaintiff seeks recovery of his attorneys' fees and costs to be paid by Defendants, as provided by the FLSA, 29 U.S.C. § 216(b), and such other legal and equitable relief as the Court deems just and proper.

## SECOND CAUSE OF ACTION
**(NYLL: Failure to Pay Overtime Compensation)**

33.     Plaintiff alleges and incorporates by reference all allegations in all preceding paragraphs, as if fully set forth herein.

34.     During the relevant time period, Plaintiff worked in excess of forty hours per workweek and, because of Defendants' above-outlined violations of the NYLL, was not paid appropriate overtime compensation.

35.     Despite the hours worked by Plaintiff, Defendants willfully, in bad faith, and in knowing violation of the NYLL, failed and/or refused to pay them appropriate overtime compensation.

36.     Defendants cannot claim that Plaintiff was a residential janitor pursuant to the Minimum Wage Order because, inter alia, Defendants did not record the number of units in place of the hours worked on Plaintiff's wage statements, as required by 12 N.Y.C.R.R. § 141-2.2 for any employee classified as a janitor under the Minimum Wage Order. Instead, the paystubs that Defendant issued to Plaintiff listed Plaintiff as an hourly employee working forty (40) hours per

week and the pay notice that Defendants provided to Plaintiff listed him as an hourly employee that would be paid overtime compensation.

37. The foregoing conduct, as alleged, constitutes a willful violation of the NYLL without a good faith basis, within the meaning of NYLL § 198, and as a result Plaintiff is entitled to liquidated damages and such other legal and equitable relief as the Court deems just and proper.

38. Plaintiff also seeks to have his reasonable attorneys' fees and costs paid by Defendants, as provided by the NYLL.

### THIRD CAUSE OF ACTION
**(NYLL: Failure to Furnish Wage Statements)**

39. Plaintiff alleges and incorporates by reference all allegations in all preceding paragraphs, as if fully set forth herein.

40. During the relevant time period, Defendants failed to furnish Plaintiff with accurate wage statements that specifically enumerated certain criteria, as required by NYLL **§** 195(3) and/or 12 N.Y.C.R.R. § 141-2.2. Specifically, the wage statements furnished by Defendants to Plaintiff did not accurately reflect the number of overtime hours that Plaintiff worked in a given workweek or, in the event that the Court finds that Plaintiff was a janitor as defined by the Minimum Wage Order, did not record the number of units in the place of hours worked.

41. Defendants' violation of the NYLL was willful and, as a result, Defendants are liable to Plaintiff in the amount of $5,000 for each violation.

42. In addition to statutory penalties, Plaintiff is entitled to recover reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

A. That the Court finds Defendants to have violated the provisions of the New York Labor Law as to Plaintiff;

B. That the Court finds Defendants to have violated the Fair Labor Standards Act as to Plaintiff;

C. That the Court determine that Defendants' violations were willful;

D. An award to Plaintiff for the amount of unpaid wages owed, including interest thereon, and penalties, including liquidated damages, subject to proof at trial;

E. An award of liquidated damages in an amount to be determined at trial pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii);

F. An award of liquidated damages pursuant to the NYLL;

G. That Court find that Defendants must cease and desist from unlawful activities in violation of the FLSA and NYLL;

H. An award of reasonable attorneys' fees and costs pursuant to the NYLL and 29 U.S.C. § 216 and/or other applicable law; and/or

I. Any such other and further relief, in law or equity, as this Court may deem appropriate and just.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury as to all issues so triable.

Dated: November 22, 2016

FILOSA LAW FIRM, PLLC

By: _____
Gregory N. Filosa (GF-3862)

111 John Street, Suite 2510
New York, NY  10038
Tel.:   (212) 256-1780
Fax.:  (212) 256-1781
gfilosa@filosalaw.com

COUNSEL FOR PLAINTIFF